IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 10, 2004 Session

## STATE OF TENNESSEE v. KEVIN DEWITT FORD AND CLIFFORD SYLVESTER WRIGHT

**Direct Appeal from the Criminal Court for Davidson County**
**Nos. 2001-A-600 and 2001-A-601     J. Randall Wyatt, Jr., Judge**

---

**No. M2003-00957-CCA-R3-CD - Filed March 23, 2005**

---

The appellants, Kevin Dewitt Ford and Clifford Sylvester Wright, each pled guilty in the Davidson County Criminal Court to multiple counts of aggravated robbery. Appellant Ford received a total effective sentence of fifty years incarceration in the Tennessee Department of Correction. Appellant Wright received a total effective sentence of forty-five years incarceration. As a condition of their pleas, the appellants attempted to reserve certified questions of law concerning the trial court's ruling on their motions to suppress. Upon review of the record and the parties' briefs, we conclude that Appellant Wright failed to properly reserve a certified question of law. Additionally, we conclude that the trial court properly denied Appellant Ford's motions to suppress. Therefore, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Peter J. Strianse, Nashville, Tennessee, for the appellant, Keven Dewitt Ford.

Michael H. Sneed (at trial and on appeal) and Ron Munkeboe (at trial), Nashville, Tennessee, for the appellant, Clifford Sylvester Wright.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sharon Brox and James Todd, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The record on appeal reveals that as a result of an investigation, officers with the Metropolitan Police Department (Metro) Armed Robbery Division supected the appellants of a nearly year-long spree of aggravated robberies. Accordingly, Detective Mike Chastain and other officers with Metro began a month-long surveillance of the appellants. On November 17, 2000, during this surveillance, Detective Chastain observed the appellants meet at Panache Beauty Salon (Panache), which salon was owned by Appellant Ford. Appellant Wright got into Appellant Ford's vehicle, and Appellant Ford then drove Appellant Wright to the intersection of Herman Street and 17th Avenue where a stolen 1992 White Dodge Caravan was located. Appellant Wright exited Appellant Ford's vehicle and got into the Caravan. The appellants drove away from the location, with Appellant Ford driving his vehicle closely behind Appellant Wright in the Caravan. The officers initiated pursuit. Appellant Wright ultimately abandoned the Caravan. Appellant Wright got into Appellant Ford's vehicle, and the pair drove back to Appellant Wright's vehicle, which vehicle was located in the parking lot of Panache.

Subsequently, on November 20, 2000, Detective Chastain witnessed the appellants meet at Panache. Appellant Ford drove Appellant Wright to 383 Haywood Lane where a stolen red Jeep Cherokee was located. Appellant Wright got into the Cherokee and drove on Nolensville Road toward downtown, with Appellant Ford closely following. When the appellants reached the Thompson Lane area, they appeared to be "casing" several businesses in the area. Appellant Wright then abandoned the Cherokee, and Appellant Ford again drove Appellant Wright to his vehicle.

Based upon the foregoing, Detective Chastain secured two arrest warrants for each appellant, charging them with the thefts of the two vehicles. Additionally, six search warrants were secured for premises associated with the appellants. On the morning of December 5, 2000, the appellants were arrested. The appellants were taken to the Criminal Justice Center (CJC) while the search warrants were executed. At the CJC, police first interviewed Appellant Wright, then Appellant Ford. During the interviews, the appellants implicated themselves in a series of aggravated robberies.

Subsequently, the appellants filed motions to suppress their statements, alleging the illegality of their arrests, the lack of probable cause underlying the search warrants, and the coercive atmosphere surrounding their confessions. A hearing was held on the motions to suppress. After hearing proof, the trial court overruled the appellants' motions to suppress. Thereafter, Appellant Ford pled guilty to seven counts of aggravated robbery, receiving a total effective sentence of fifty years. Appellant Wright pled guilty to six counts of aggravated robbery, receiving a total effective sentence of forty-five years. As a condition of their pleas, the appellants reserved the right to raise certified questions of law regarding the trial court's ruling on their motions to suppress. Before reviewing the appellants' complaints regarding their motions to suppress, we must first determine whether they properly reserved certified questions of law.

## II. Analysis

### A. Certified Questions of Law

Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure provides that an appellant may appeal from any judgment of conviction occurring as a result of a guilty plea if the following requirements are met:

> (A)  The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by defendant for appellate review;
>
> (B)  The question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
>
> (C)  The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and
>
> (D)  The judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case.

Additionally, in State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988), our supreme court explicitly provided prerequisites to appellate consideration of a certified question of law under Rule 37(b)(2)(i).  The court stated:

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved.

Id.

This court has repeatedly cautioned that "[b]ecause the prerequisites enunciated in Preston are mandatory, failure to properly reserve a certified question of law pursuant to Preston will result in the dismissal of the appeal."  State v. Andrea McCraw, No. 03C01-9903-CR-00106, 2000 WL 250146, at *2 (Tenn. Crim. App. at Knoxville, Mar. 7, 2000) (citing State v. Pendergrass, 937 S.W.2d 834, 838 (Tenn. 1996)).  In State v. Armstrong, 126 S.W.3d 908, 912 (Tenn. 2003), our supreme court again considered the Preston/Rule 37 requirements and concluded that substantial compliance with the dictates of Preston was not sufficient to properly certify a question of law.

-3-

However, Armstrong provided that a trial court could take corrective action prior to the judgment becoming final in order to comply with Preston. See Armstrong, 126 S.W.3d at 912.

In the instant case, Appellant Ford complied with the strictures provided in Preston. His judgments of conviction specifically provide that he entered conditional pleas of guilt while reserving certified questions of law. Moreover, the judgments of conviction explicitly incorporate by reference an attached "Addendum to Judgment" which clearly outlines the certified questions of law. The addendum was signed by the trial court, the appellant, and the State. Therefore, Appellant Ford's certified questions of law are properly before this court.

Appellant Wright, however, did not strictly follow the dictates of Preston. None of Appellant Wright's judgments of conviction provide that he entered a conditional guilty plea while reserving a certified question of law. Further, the judgments of conviction do not explicitly incorporate by reference any document which states Appellant Wright's certified question of law. There are documents in the record styled "Addendum to Judgment of Conviction," purporting to be attachments to Appellant Wright's judgments of conviction. However, these addendums do not frame Appellant Wright's certified question of law, nor were they signed by the trial court or the State. The documents provide that "[t]he scope and limits of the legal issue reserved is more fully set forth in [Appellant Wright's] Motion to suppress and the Court's memorandum opinion and order, filed on April 7, 2003." Numerous issues are raised in these documents. It is not the burden of this court to ferret out an appellant's certified question of law. Instead, the burden is on an appellant to ensure compliance with the requirements of Rule 37 and Preston. See Preston, 759 S.W.2d at 650. Accordingly, we must conclude that Appellant Wright failed to properly certify his question of law for appellate review. See State v. Carlos E. Bryan, No. M2001-02705-CCA-R3-CD, 2002 WL 31769200, at *2 (Tenn. Crim. App. at Nashville, Dec. 11, 2002). Therefore, we will address only the issues raised by Appellant Ford's certified questions of law.

## B. Motions to Suppress

Appellant Ford's certified questions stem from the trial court's denial of his motions to suppress. In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

In his judgments, Appellant Ford sets out his certified questions of law as follows:

In the trial Court, [Appellant Ford] moved to suppress his confession to committing a series of Aggravated Robberies on several grounds: (1) that [Appellant Ford] was arrested pursuant to two facially insufficient vehicle theft warrants, both of which failed to state an offense, in contravention of the Fourth Amendment to the United States Constitution, Article 1, Section 7 of the Tennessee Constitution, Tenn.R.Crim.P. Rules 3 & 4, and T.C.A. § 40-6-205; (2) that [Appellant Ford's] subsequent confession which is inextricably intertwined with the prior unlawful arrest, is a fruit of the exploitation of the poisonous arrest; (3) that the police officers who interrogated [Appellant Ford] ignored his request for counsel and his right to remain silent in violation of the Fifth Amendment; (4) that the police officers who interrogated [Appellant Ford] failed to honor his Sixth Amendment right to counsel which attached upon the issuance of the two theft of property warrants issued some 14 hours prior to the interrogation; (5) that the police officers who interrogated [Appellant Ford] ignored his request to use the telephone in violation of T.C.A. § 40-7-106(b); (6) that [Appellant Ford's] waiver of his Sixth Amendment right to counsel and his resulting confession were involuntary; (7) that the police officers who arrested and later interrogated [Appellant Ford] failed to explain their reason for arresting him and failed to show him the arrest and search warrants in violation of T.C.A. § 40-7-106(a); (8) that the police officers who arrested [Appellant Ford] failed to take him before a magistrate without "unnecessary delay" in violation of Tenn.R.Crim.P. 5(a) ; and, as a corollary, (9) that the search warrant that was served on [Appellant Ford's] business at the time of his arrest on December 5, 2000 was issued without probable cause, without "evidence of the fact committed," and without a nexus between the alleged robberies and the place to be searched.

We will address these issues in an order different from that in which they were raised.

1. Arrest

On appeal, Appellant Ford first complains that the arrest warrants were facially insufficient because the underlying affidavits of complaint "failed to state offenses." Specifically, the appellant maintains that

[u]pon careful scrutiny of the Affidavits, it is clear that Detective Chastain claims that [Appellant] Ford was merely present for the alleged transgression of [Appellant] Wright and not that he committed them. Both Affidavits state that [Appellant] Ford drove

-5-

[Appellant] Wright to the already-stolen vehicles, followed [Appellant] Wright while he moved the vehicles, and then drove [Appellant] Wright back to his car. These facts do not justify the issuance of Arrest Warrants for Theft of Property.

Tennessee Rule of Criminal Procedure 4(b) provides that in the application for the issuance of an arrest warrant, "[t]he finding of probable cause shall be based upon evidence, which may be hearsay in whole or in part provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Probable cause is "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998). Moreover, we note that courts should determine the existence of probable cause after assessing all of the information available to the officer at the time of arrest. See State v. Woods, 806 S.W.2d 205, 212 (Tenn. Crim. App. 1990).

Regardless, "an arrest warrant is not required in order to effectuate an arrest for a felony offense." State v. Lewis, 36 S.W.3d 88, 97 (Tenn. Crim. App. 2000). An officer may arrest a person without a warrant "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it." Tenn. Code Ann. § 40-7-103(a)(3) (2003). Therefore, "the proper inquiry in the case at bar is not whether the warrant was lawful, but whether the arrest itself was lawful." Lewis, 36 S.W.3d at 98.

In the instant case, in the affidavit of complaint underlying the issuance of the search warrant regarding the theft of a 1992 White Dodge Caravan, Detective Chastain stated that Appellant Ford drove from a residence to his business, Panache, which business is located at 1700 Jefferson Street. At Panache, Appellant Ford met with Appellant Wright. Appellant Ford then drove Appellant Wright to the location where the Caravan, which the owner had reported stolen, was located. Appellant Wright drove the Caravan, while Appellant Ford followed. Appellant Wright eventually abandoned the Caravan, and Appellant Ford drove him back to Panache. The facts underlying the arrest warrant for the theft of a Red Jeep Cherokee are almost identical to the foregoing facts.

Moreover, we note that at the suppression hearing, Detective Chastain testified that during the thefts, it was "obvious" that Appellant Ford and Appellant Wright were operating together. Appellant Ford took Appellant Wright to the location of the stolen vehicles. On each occasion, Appellant Wright drove the vehicles, with Appellant Ford following closely behind. After Appellant Wright began driving with Appellant Ford following, they made the same lane changes and turns. Appellant Ford picked up Appellant Wright when he abandoned the vehicles.

Clearly, a theft of the vehicles had been committed. The arrest warrants allege that the vehicles were worth more than $1,000, but less than $10,000, rendering the offenses Class D felonies. See Tenn. Code Ann. § 39-14-103 (2003) and 39-14-105(3) (2003). Thus, our next inquiry is whether Detective Mason reasonably believed the appellant committed the offense. See Lewis, 36 S.W.3d at 98; see also State v. Robert A. Cummins, No. W2000-00277-CCA-R3-CD, 2001 WL 912792, at *5 (Tenn. Crim. App. at Jackson, Aug. 10, 2001) ("Our courts make little, if any,

distinction between the terms 'reasonable cause' and 'probable cause' in determining whether there exists a basis for an arrest.").

Detective Chastain stated that it was "obvious" that the two men were working in concert. Although Appellant Ford contends that "[u]pon careful scrutiny of the Affidavits, it is clear that Detective Chastain claims that [Appellant] Ford was merely present for the alleged transactions of [Appellant] Wright and not that he committed them," we note that

> [p]resence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which one's participation in the crime may be inferred. No particular act need be shown. It is not necessary for one to take a physical part in the crime. Mere encouragement of the principal is sufficient.

State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). We conclude that the foregoing facts were sufficient to establish Appellant Ford's participation in the crimes of vehicle theft. Therefore, Appellant Ford's arrest was lawful.

## 2. Search

Appellant Ford next contends that the search warrant for his business "was issued without probable cause, without 'evidence of the fact committed,' and without a nexus between the alleged robberies and the place to be searched."[1] Our supreme court has explained that

> [t]he Fourth Amendment to the United States Constitution requires that search warrants issue only "upon probable cause, supported by Oath or affirmation." Article I, Section 7 of the Tennessee Constitution precludes the issuance of warrants except upon "evidence of the fact committed." Therefore, under both the federal and state constitutions, no warrant is to be issued except upon probable cause.

Henning, 975 S.W.2d at 294 (footnote omitted). In this state, "a finding of probable cause supporting issuance of a search warrant must be based upon evidence included in a written and sworn affidavit." Id. Specifically, "[i]n order to establish probable cause, an affidavit must set forth facts from which a reasonable conclusion may be drawn that the contraband will be found in the place to be searched pursuant to the warrant." State v. Norris, 47 S.W.3d 457, 470 (Tenn. Crim. App. 2000). We note that "'affidavits must be looked at and read in a commonsense and practical manner', and . . . the finding of probable cause by the issuing magistrate is entitled to great deference." State v. Bryan, 769 S.W.2d 208, 211 (Tenn. 1989) (quoting State v. Melson, 638 S.W.2d 342, 357 (Tenn. 1982)).

---

[1] Appellant Ford does not challenge the searches of his residences.

Detective Chastain's affidavit supporting the issuance of the search warrant was more than four pages in length. In the affidavit, Detective Chastain stated that for several months there had been "a series of armed robberies occurring in the Nashville Davidson County area." The modus operandi of the crimes, which Detective Chastain described in detail, indicated that the same suspects committed all of the crimes. There were three suspects involved in the robberies. The first suspect was a "male black 62 to 65 inches tall and chubby." The second subject was a "male black 66 to 69 inches tall and thin." The third suspect's height and weight were unknown because he normally drove the "getaway vehicle."

In investigating the related cases, Detective Chastain discovered that during the robbery of an Amoco Food Shop, one of the suspects had dropped a small white hand towel on the ground. On the towel, written in ink, were the words "Clipper Sensations."[2] Detective Chastain reviewed the business license for Clipper Sensations and discovered that Appellant Ford was the listed owner. Appellant Ford's physical description, "[m]ale black, 64 inches tall, 150 lbs.," was similar to that of one of the suspects. Appellant Ford had a history of armed robbery and vehicle thefts. His federal conviction for bank robbery had a similar modus operandi to the current string of robberies.

The affidavit also contained the surveillance information regarding Appellant Ford and Appellant Wright transporting stolen vehicles. Appellant Wright's description, "[m]ale black, 67 incles tall, 180 lbs.," was similar to another suspect in the robberies. The appellants were observed frequenting Panache at 1700 Jefferson Street, which was also the same address Appellant Ford used for the business Clipper Sensations. Appellant Ford was observed working at 1700 Jefferson Street on a few occasions.

In summation, Detective Chastain stated:

> Based on surveillance and observations it appears to this Affiant that these two subjects are each living at two separate locations. It appears that [Appellant Ford] and [Appellant Wright] are not gainfully employed. These subjects have been observed spending money at various stores and gas stations. [Appellant Ford] and [Appellant Wright] have used 1700 Jefferson Street as a meeting place prior to committing crimes. Both [Appellant Ford] and [Appellant Wright] match the same or similar description of the suspects that were described in the series of armed robberies we have been investigating. They have driven vehicles that are consistent with what has been described as being used in the series of armed robberies we have been investigating. [Appellant Ford] has been convicted of armed robbery where the method of operation he used was the same or similar in the series of armed robberies we have been investigating. [Appellant Ford] has also been arrested for vehicle

---

[2] In the record, the name of the business is also spelled "Klipper Sensations."

-8-

theft. [Appellant Wright] has a record for weapons and drug offenses. [Appellant Ford] and [Appellant Wright] have been observed transporting stolen vehicles that are consistent with what has been described as used in the series of armed robberies we have been investigating. The weapons used in the series of armed robberies we have been investigating are that of a black revolver and a large silver semi automatic handgun. [Appellant Wright] has been observed wearing a hat and gloves that are similar to what has been described as what the suspects wore during in the series of robberies that we are investigating.

Based upon the foregoing, a search warrant for Appellant Ford's business at 1700 Jefferson Street was granted.[3]

We conclude that there was sufficient probable cause for the issuance of the search warrant. Appellant Ford's physical description matched that of a suspect in a series of robberies; his companion, Appellant Wright, also matched the description of one of the suspects; Appellant Ford had committed the same or similar crime previously; the appellants were seen driving vehicles similar to those involved in the robberies; and a towel bearing the name of Appellant Ford's business, Clipper Sensations, had been left at the scene of one of the crimes.

Appellant Ford also contends that the affidavit did not establish a sufficient nexus between the evidence sought and the premises to be searched. Our supreme court has expounded that

> [a]n affidavit in support of a search warrant must set forth facts from which a reasonable conclusion might be drawn that the evidence is in the place to be searched. The nexus between the place to be searched and the items to be seized may be established by the type of crime, the nature of the items, and the normal inferences where a criminal would hide the evidence.

State v. Smith, 868 S.W.2d 561, 572 (Tenn. 1993) (citations omitted). In the instant case, Detective Chastain stated that the appellants frequented 1700 Jefferson Street, particularly before the commission of crimes. Additionally, a towel bearing the name of Appellant Ford's business, Clipper Sensations, which was operated out of 1700 Jefferson Street, was found at the scene of one of the crimes. In light of these facts, we conclude that sufficient evidence existed to provide a nexus between the location to be searched and the crimes committed. Accordingly, the trial court did not err in refusing to suppress the fruits of search of 1700 Jefferson Street.[4]

---

[3] Apparently, Clipper Sensations and Panache were operated out of the same building.

[4] We note that Appellant Ford failed to specify what evidence seized from 1700 Jefferson Street he wished to be suppressed. In any event, any evidence seized as a result of this search was admissible.

Additionally, we note that Appellant Ford complains that he was not shown a search warrant for 1700 Jefferson Street. However, Detective Chastain's testimony reveals that a search warrant was given to Appellant Ford upon entry into the business. By overruling Appellant Ford's motion to suppress, the trial court implicitly accredited Detective Chastain's testimony. This issue is without merit.

### 3. Statements

Finally, Appellant Ford raises multiple issues relating to his statements to law enforcement after his arrest. Specifically, Appellant Ford contends that his confession was the result of his unlawful arrest, his requests for counsel and for the use of a telephone were denied, his right to remain silent was ignored, his Sixth Amendment right to counsel was not honored, he was not shown his arrest warrant and was unaware of the nature of the charges against him, and his waiver of his rights was involuntary. Appellant Ford argues that all of the foregoing factors contributed to the involuntariness of his confession. Accordingly, he maintains that his confession should have been suppressed.

Generally, the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution provide a privilege against self-incrimination to those accused of criminal activity, making an inquiry into the voluntariness of a confession necessary. See State v. Callahan, 979 S.W.2d 577, 581 (Tenn.1998). However, if an accused is informed of his Miranda rights and knowingly and voluntarily waives those rights, he may waive the privilege against self-incrimination. Id. (citing Miranda v. Arizona, 384 U.S. 436, 444-45, 479-78, 86 S. Ct. 1602, 1612, 1630 (1966)). Additionally, the trial judge's findings of fact at the motion to suppress hearing are accorded the weight of a jury verdict. See State v. Tate, 615 S.W.2d 161, 162 (Tenn. Crim. App. 1981). Accordingly, the trial court's decision is binding upon this court if the decision is supported by a preponderance of the evidence. Odom, 928 S.W.2d at 22-23.

This court must consider "the totality of the circumstances to determine whether the confession is admissible." State v. Grady E. Shoffner, No. 03C01-9403-CR-00113, 1995 WL 382628, at *3 (Tenn. Crim. App. at Knoxville, June 27, 1995) (citing State v. Kelly, 603 S.W.2d 726, 728-29 (Tenn. 1980)). Accordingly, we consider the following factors in determining the voluntariness of a confession: the appellant's age; education or intelligence level; previous experience with the police; the repeated and prolonged nature of the interrogation; the length of detention prior to the confession; the lack of any advice as to constitutional rights; the unnecessary delay in bringing the appellant before the magistrate prior to the confession; the appellant's intoxication or ill health at the time the confession was given; deprivation of food, sleep, or medical attention; any physical abuse; and threats of abuse. See State v. Huddleston, 924 S.W.2d 666, 671 (Tenn. 1996). Furthermore, this court has stated:

> Coercive police activity is a necessary prerequisite in order to find a
> confession involuntary. The crucial question is whether the behavior
> of the state's officials was "such as to overbear [the appellant's] will

to resist and bring about confessions not freely self-determined." The question must be answered with "complete disregard" of whether or not the accused was truthful in the statement.

State v. Phillips, 30 S.W.3d 372, 377 (Tenn. Crim. App. 2000) (citations omitted).

In the instant case, the trial court found:

> After hearing testimony and carefully reviewing the videotapes of the interrogation[s] of the [appellants], the Court finds that the [appellants'] right under the Fifth and Sixth Amendment[s] have not been violated. . . .
>
> The Court is of the opinion that [Appellant] Wright did not request an attorney although there may have been a brief mention of making a phone call. The Court further notes that both [appellants'] statements were voluntary. It is acknowledged that there was a delay between the arrest and the taking of the [appellants] before a magistrate, but it was reasonable under all of the circumstances surrounding the questioning and processing of the [appellants] and the availability of only one office for the interviews of the [appellants] who were being interviewed one after the other. Furthermore, there was no promise of leniency made, although there may have been an implied benefit for their cooperation.

First, we note that Appellant Ford was thirty years old at the time of the suppression hearing. He asserted that he graduated from high school and had no problems reading or writing. Additionally, we note that Appellant Ford owned his own business at the time of the offenses. Appellant Ford had previously been convicted in federal court of bank robbery. Appellant Ford testified that he was read his rights when he was arrested for bank robbery. He admitted that he was aware of his rights before he gave a statement in the instant case.

Appellant Ford was arrested at approximately 11:45 a.m. on December 5, 2000. He was taken to the CJC while police executed various search warrants. Detective Chastain arrived at the CJC at approximately 5:00 p.m. and informed Appellant Ford that if he wished to talk, they would have to wait for the interview room, then occupied by Appellant Wright, to be vacated. Appellant Ford was given a Sprite to drink and peanut butter crackers to eat. He was allowed to go to the restroom. While at the CJC, Appellant Ford's hands were cuffed in front of his body, and sometimes he was cuffed by a single hand to a chair. Sergeant Freddie Stromatt, who was present as Appellant Ford was detained in the CJC, testified that Appellant Ford appeared to be in "perfectly fine and normal" physical condition in the CJC.

-11-

As one of his specific complaints, Appellant Ford claims that his confession was tainted by his illegal arrest. As we earlier concluded, his arrest was not unlawful. Accordingly, Appellant Ford's confession was not influenced by an illegal arrest.

Appellant Ford next argues that law enforcement did not honor his invocation of his Fifth Amendment right to remain silent or his request for counsel. Again, we note that both the Fifth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution provide protection against compulsory self-incrimination. To this end, "'[o]nce warnings have been given, . . . [i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At that point, he has shown that he intends to exercise his Fifth Amendment privilege." State v. Crump, 834 S.W.2d 265, 269 (Tenn. 1992) (quoting Miranda, 384 U.S. at 473-74, 86 S. Ct. at 1627).

In the instant case, Detective Chastain testified that Appellant Ford never requested an attorney, nor did he indicate his desire to remain silent. Detective Chastain maintained that Appellant Ford expressed his willingness to speak with police. We conclude that in overruling Appellant Ford's motions to suppress, the trial court implicitly accredited the testimony of Detective Chastain. Therefore, Appellant Ford's Fifth Amendment rights were not violated.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution grant the criminally accused the right to counsel. See State v. Blye, 130 S.W.3d 776, 779 (Tenn. 2004). However, this right only attaches after the initiation of adversary criminal proceedings. Id. at 780. For example, the right to counsel attaches "at the time an arrest warrant issues, a preliminary hearing is held (if no arrest warrant is issued), or an indictment or presentment is returned." State v. Jackson, 889 S.W.2d 219, 222 (Tenn. Crim. App. 1993). In the instant case, there is no dispute that two arrest warrants were issued, charging Appellant Ford with theft. Thus, his Sixth Amendment right to an attorney was activated as to those offenses.

However, we note that "'[t]he Sixth Amendment right . . . is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced.'" Sepulveda v. State, 90 S.W.3d 633, 638 (Tenn. 2002) (quoting McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S. Ct. 2204, 2207 (1991)). Moreover, "'[o]nce formal criminal proceedings begin, the Sixth Amendment renders inadmissible in the prosecution's case-in-chief statements "deliberately elicited" from a defendant without an express waiver of the right to counsel.'" State v. Terrance Lewis, No. W2003-00356-CCA-R3-CD, 2004 WL 22125, at *7 (Tenn. Crim. App. at Jackson, Jan. 30, 2004) (quoting State v. Land, 34 S.W.3d 516, 523 (Tenn. Crim. App. 2000)). There is no indication that Appellant Ford made incriminating statements as a result of interrogation prior to his interview with Detective Chastain. According to Detective Chastain, Appellant Ford was advised of his Miranda rights prior to the interview, and Appellant Ford signed a waiver of those rights, key among them now being the right to counsel. Therefore, we must now address Appellant Ford's contention that he did not validly waive his right to counsel under either the Fifth or Sixth Amendments.

Appellant Ford contends that police coerced his waiver of rights and his confession in a number of ways. First, he complains that police coerced his cooperation by refusing to explain his rights during the first hours of custody. The entitlement to Miranda protections is limited to situations involving custodial interrogation or its functional equivalent. See State v. Jimmy Albert Warren, No. W2004-00107-CCA-R9-CD, 2004 WL 3140905, at *5 (Tenn. Crim. App. at Jackson, Dec. 15, 2004), application for perm. to appeal filed, (Feb. 14, 2005). Admittedly, Appellant Ford was not given Miranda warnings at the time of his arrest. Regardless, Appellant Ford was not interrogated prior to 8:30 p.m. on December 5, 2000, when the interview began. Accordingly, he was not entitled to his rights before the custodial interrogation. Detective Chastain testified that Appellant Ford was read his rights before the interview in which he made incriminating statements. Specifically, Detective Chastain testified that he thoroughly discussed Appellant Ford's Miranda rights with him, and Appellant Ford subsequently signed a waiver of those rights before questioning. See State v. Carter, 16 S.W.3d 762, 767 (Tenn. 2000) (stating that proof that a defendant was made aware of his Miranda rights, although not conclusive, weighed in favor of the admission of a confession into evidence).

Appellant Ford also contends that law enforcement failed to explain the reason for his arrest and failed to show him the warrants for his arrest. Tennessee Code Annotated section 40-4-106(a) (2003) provides that "[w]hen arresting a person, the officer shall inform the person of the officer's authority and the cause of the arrest, and exhibit the warrant if the officer has one, except when the person is in the actual commission of the offense or is pursued immediately after an escape."

At the suppression hearing, Detective Chastain testified that at approximately 11:45 a.m. on December 5, 2000, he went to Panache, Appellant Ford's place of business, to arrest Appellant Ford and to execute a search warrant for the premises. When the officers entered Panache, "We did announce who we were and advised that [Appellant Ford] did have a warrant for his arrest and that we were conducting a search warrant there." Further, Detective Chastain stated, "I believe I did tell him that there was a theft warrant. He did know, and we did identify ourselves as Metro Robbery Detectives. I believe he probably put two and two together in his mind and realized what he was under arrest for, also." Regardless, Detective Chastain maintained that he informed the appellant of the felony theft charges. However, Detective Chastain conceded that Appellant Ford was never given a copy of the arrest warrants.

The facts adduced at the suppression hearing reveal that Detective Chastain informed Appellant Ford of the charges against him; however, Detective Chastain failed to comply with the instructions of Tennessee Code Annotated section 40-4-106(a) by exhibiting the arrest warrants. We note that Tennessee Code Annotated section 40-6-216(a) (2003) provides that a criminal defendant or his attorney shall have the right to request and receive a copy of an arrest warrant at a reasonable time. From the record, it is unclear at what point Appellant Ford was served with a copy of the arrest warrants. Regardless of this shortcoming, we conclude that Appellant Ford was not prejudiced by failing to receive a copy of the arrest warrants immediately after his arrest. See State v. Hill, 638 S.W.2d 827, 830 (Tenn. Crim. App. 1982); see also United States v. Buckner, 717 F.2d 297, 301 (6th Cir. 1983); United States v. Turcotte, 558 F.2d 893, 896 (8th Cir. 1977).

Appellant Ford also contends that there was an "unnecessary delay" between his arrest and his presentation to a magistrate. Rule 5(a) of the Tennessee Rules of Criminal Procedure provides:

> Any person arrested except upon a capias pursuant to an indictment or presentment shall be taken without unnecessary delay before the nearest appropriate magistrate of the county from which the warrant for arrest issued, or the county in which the alleged offense occurred if the arrest was made without a warrant unless a citation is issued pursuant to Rule 3.5.

Our supreme court "has held that if an individual is not brought before a magistrate within 72 hours, there has been 'unnecessary delay.'" Carter, 16 S.W.3d at 768; see also Huddleston, 924 S.W.2d at 670. Further, our courts have found that there was no unnecessary delay when a defendant was not taken before a magistrate for twelve to thirteen hours after his arrest. See State v. Davis, 141 S.W.3d 600, 625 (Tenn. 2004) (appendix).

Appellant Ford was arrested at approximately 11:45 a.m. on December 5, 2000. He was taken before the night commissioner at approximately 12:00 a.m. on December 6, 2000, a delay of just over twelve hours. The delay was attributable to police executing the search warrants and the wait for the interview room. We conclude that there was no unnecessary delay in bringing Appellant Ford before the night commissioner. Regardless, "a confession obtained during a period of unnecessary delay is not automatically suppressed." Id. A confession is excluded only if the totality of the circumstances reveals that the statement was not voluntarily given. Id.

Appellant Ford also maintains that police threatened him "with a fifty-one (51) year term of incarceration under the Hobbs Act as punishment for failure to confess." Appellant Ford testified that he was repeatedly threatened by Detective Chastain with federal prosecution under the Hobbs Act. However, Detective Chastain denied ever mentioning the Hobbs Act, going so far as to say that he had never heard of the Hobbs Act. The trial court found no coercion on the part of police, and we see no reason to fault this finding.

Appellant Ford complains that police coerced his waiver of rights and confession by "falsely telling him that his cousin [Appellant Wright] was already cooperating and had implicated him." We note that testimony at the suppression hearing revealed that Appellant Wright was interviewed prior to Appellant Ford, and Appellant Wright confessed to the robberies. Accordingly, police did not "falsely" inform Appellant Ford of Appellant Wright's cooperation. We can hardly see where an accurate portrayal of the evidence against Appellant Ford was "coercive."

Appellant Ford maintains that police promised him leniency if he confessed. Detective Chastain and Sergeant Stromatt both explicitly denied making any promises in exchange for Appellant Ford's confession. However, Detective Chastain testified that "cooperation always does, in my opinion, help the subject out when an investigation like this is – is occurring." Promises of leniency do not per se render a confession inadmissible; confessions after promises of leniency are

excluded only if the promises were sufficiently significant to overbear the subject's will. See State v. Smith, 933 S.W.2d 450, 455-56 (Tenn. 1996). In the instant case, we can find no coercion sufficient to overbear Appellant Ford's will.

Appellant Ford also complains that he was denied a telephone call. There is no dispute that Appellant Ford asked to call his girlfriend or fiancé prior to the interview. Tennessee Code Annotated section 40-7-106(a) (2003) provides that an accused should be afforded one phone call prior to booking, preferably within one hour of being arrested. However, officers testified that Appellant Ford was not permitted to make a telephone call while the search warrants were being executed because of the risk of loss of evidence. Regardless, when Detective Chastain arrived at the CJC, he knew that the search warrants had been executed and the loss of evidence was no longer an issue. Thus, it is clear that Tennessee Code Annotated section 40-7-106(a) was violated. A violation of this statute does not automatically render a statement inadmissible. It is but one factor to consider in determining the voluntariness of an accused's statement. See State v. Claybrook, 736 S.W.2d 95, 103 (Tenn. 1987).

After examining all of the evidence, we conclude that Appellant Ford knowingly and voluntarily waived his rights to counsel and to remain silent. Additionally, Appellant Ford knowingly and voluntarily made a statement to police, implicating himself in the crimes to which he later pled guilty. We find no reason to overrule the trial court's ruling on Appellant Ford's motions to suppress.

### III.  Conclusion

Finding no reversible error, we affirm the judgments of the trial court in regards to both Appellant Ford and Appellant Wright.

_____
NORMA McGEE OGLE, JUDGE