# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 3, 2003 Session

## STATE OF TENNESSEE v. ALLEN PRENTICE BLYE

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Sullivan County**
**Nos. S42, 293     R. Jerry Beck, Judge**

---

### No. E2001-01227-SC-R11-CD - Filed February 25, 2004

---

We granted permission to appeal in this case to consider whether the Sixth Amendment entitles the defendant to participate, through counsel, in the determination of the existence of probable cause for the issuance of a warrant to seize a sample of the defendant's blood. Because we find that the defendant has no such entitlement, we affirm the judgment of the Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal By Permission; Judgment of the Court of Criminal Appeals Affirmed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Kenneth F. Irvine, Jr., and Julie A. Rice, Knoxville, Tennessee (on appeal); Terry Jordan, Assistant Public Defender, Blountville, Tennessee (at trial and on appeal); and Mark Toohey, Kingsport, Tennessee (at trial), for the appellant, Allen Prentice Blye.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Mark A. Fulks, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph E. Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I. Facts and Procedural History

On June 19, 1998, the victim, R.C.,[1] was awakened when she felt someone in bed with her. The male attacker put his hands around her neck and began choking her. R.C. struggled with her attacker, and the two fell off the bed and onto the floor, with the victim landing on her stomach and

---

[1] In keeping with the Court's policy, we identify the victims of sexual offenses by their initials.

the man landing on her back. Reaching back, R.C. felt some type of soft fabric covering his head. The attacker forcibly removed R.C.'s panties, pulled his pants down, and penetrated her. Afterwards, he put a pillowcase over her head and dragged her into the bathroom. The attacker filled the sink with hot water and tried to force the victim to sit in the sink. When she resisted, he put her on the floor and attempted to rinse her genital area with water from the sink. After the attacker had left the bathroom, R.C. escaped through the bathroom window and went to a neighbor's residence. The neighbor called the police.

R.C. never saw her attacker's face. She noticed, however, that he was wearing loose-fitting gloves, and she estimated that he was approximately five feet, ten inches to six feet tall. She also stated that she had smelled the odor of gasoline or kerosene about him.

When the police arrived at the scene, they found a pair of nylon jogging pants in R.C.'s kitchen sink, with water running over them. The pants, which were not the victim's, were later determined to have gasoline and kerosene on them.

R.C. was taken to the hospital where medical personnel performed a rape kit examination. The treating physician testified that R.C. had bruises on her neck, a larger bruise on her left buttock, and abrasions on her left flank. Police collected the articles that R.C. had worn during the attack.

In January 1999, the Sullivan County Grand Jury issued a presentment charging the defendant, Allen Prentice Blye, with aggravated burglary and aggravated rape. Counsel was appointed to represent the defendant. In July 1999, the State filed a motion in the Criminal Court for Sullivan County, Second Judicial Circuit, seeking a search warrant to obtain a blood sample from the defendant to conduct DNA (deoxyribonucleic acid) testing. After an evidentiary hearing, the trial court denied the State's motion, finding that the State had failed to establish probable cause for the issuance of the search warrant. The State filed a supplemental motion in April 2000 in which it alleged that since the trial court's earlier ruling denying the State's request, the State had obtained additional evidence that would establish probable cause for the issuance of a search warrant to obtain a blood sample.

The criminal case was assigned to Judge R. Jerry Beck in the Criminal Court for Sullivan County, Second Judicial District. After the district attorney had filed the supplemental motion in that court, but before that motion was scheduled for a hearing, the police investigator sought to obtain a search warrant from Judge Lynn Brown, a judge in the First Judicial District.[2] The affidavit submitted by the investigator to Judge Brown stated, in pertinent part:

> [a]s part of this investigation, it was learned that the defendant had contacted a friend, Deborah McDowell, and had corresponded with her by letters, with the purpose of

_____

[2]The First Judicial District includes Johnson County, the county in which the defendant was incarcerated at the time. See Tenn. R. Crim. P. 41(a) (providing "[a] search warrant authorized by this rule may be issued by a magistrate with jurisdiction within the county wherein the property sought is located").

having her contact the victim for him. On February 28, 2000, I [the investigating detective] went to the Tennessee Prison [f]or Women, in Nashville and interviewed Ms. McDowell. During this interview, she advised that she still had a letter and envelope sent to her by the defendant. She voluntarily released these items to me, and I took them to the TBI Lab. I submitted the envelope for analysis, and saliva was found. DNA, isolated and analyzed from the saliva, was compared to the DNA profile of the seminal fluid [recovered from the rape kit and from the tee shirt worn by the victim on the night she was raped]. The results of this test revealed that the saliva, from the envelope, had the same profile as the seminal fluid, recovered from the scene of the rape. The odds of it being someone unrelated would be beyond the known population of the world.

This letter was sent to Ms. McDowell, and contained the return address belonging to [the defendant], and the handwriting was confirmed by Ms. McDowell as belonging to [the defendant]. Your affiant is presently aware of [the defendant's] address and of his handwriting, both matching what is displayed on the envelope. Your affiant has probable cause to believe that [the defendant] sent this letter to Ms. McDowell, and that the saliva recovered from the envelope is his. Your affiant also has probable cause to believe that the blood of [the defendant] will be matched, by DNA, to the seminal fluid left by the rapist.

Based upon the affidavit, Judge Brown issued a search warrant authorizing the taking of a blood sample from the defendant. The investigator then went to the Northeast State Correctional Facility in Johnson County, where the defendant was incarcerated. The investigator, along with one or more correctional officers, met with the defendant in the prison infirmary. After the defendant refused to submit to the drawing of blood, the investigator returned to Judge Brown, who then authorized the taking of a blood sample "by whatever means may be necessary or by any necessary restraint." The investigator returned to the Northeast State Correctional Facility. The investigator and the prison warden informed the defendant that the judge had authorized the use of force, if necessary, to obtain a blood sample. The defendant then agreed to submit to the drawing of blood, but only after signing a handwritten document stating that he was doing so "under duress." Medical personnel obtained the blood sample from the defendant.

The Tennessee Bureau of Investigation (TBI) analyzed the defendant's blood sample and determined that the defendant's DNA matched the DNA found in the seminal fluid recovered from the rape examination of the victim and from the victim's tee shirt. In September 2000, the defendant filed a motion to suppress the DNA evidence obtained pursuant to the search warrant issued by Judge Brown. He argued that the ex parte procedure used to obtain the search warrant violated his Sixth Amendment right to counsel. The trial court denied the motion to suppress, and the DNA proof subsequently was introduced into evidence at trial.

A jury convicted the defendant of aggravated burglary and aggravated rape. The trial court sentenced him as a Range III, persistent offender to fifteen years imprisonment for the aggravated

burglary conviction, and as a Range II, violent offender to forty years imprisonment for the aggravated rape conviction. The trial court ordered that the sentences be served consecutively, for an effective sentence of fifty-five years. The Court of Criminal Appeals affirmed the trial court's judgment, concluding, in part, that the defendant was not entitled to notice and a hearing before the search warrant was issued. The defendant, acting pro se, filed an application for permission to appeal to this Court pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure. We granted permission to appeal[3] in this case to consider whether the Sixth Amendment entitles the defendant to participate, through counsel, in the determination of the existence of probable cause for the issuance of a warrant to seize a sample of the defendant's blood.

## II. Standard of Review

The facts concerning the issuance and execution of the search warrant are not in dispute; instead, the issue presented–whether the Sixth Amendment entitles the defendant to an adversarial hearing on the issuance of the search warrant–is a question of law. We review questions of law de novo with no presumption of correctness given to the lower courts. State v. Turco, 108 S.W.3d 244, 246 (Tenn. 2003).

## III. Analysis

The defendant contends that because his Sixth Amendment right to counsel[4] had attached at the time the presentment was returned, the ex parte application for and the issuance of the search warrant violated his Sixth Amendment right to the assistance of counsel. Both the Sixth Amendment to the United States Constitution[5] and Article I, Section 9 of the Tennessee Constitution[6] guarantee the right to assistance of counsel at "critical stages" of the prosecution "where counsel's absence might derogate from the accused's right to a fair trial." State v. Martin, 950 S.W.2d 20, 25 (Tenn. 1997) (quoting United States v. Wade, 388 U.S. 218, 226 (1967)). The constitutional right to assistance of counsel attaches at the time adversarial judicial proceedings are initiated against the

---

[3]This Court appointed Kenneth F. Irvine to represent the defendant in this appeal.

[4]The defendant relies upon the right-to-counsel provisions of both the federal and state constitutions. For ease of reference, however, we will refer to both provisions as the "Sixth Amendment right to counsel."

[5]The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."

[6]Article I, section 9 provides: "Right of the accused in criminal prosecutions.–That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and in prosecutions by indictment or presentment, a speedy public trial, by an impartial jury of the County in which the crime shall have been committed, and shall not be compelled to give evidence against himself."

defendant. See Maine v. Moulton, 474 U.S. 159, 169-70 (1985); Kirby v. Illinois, 406 U.S. 682, 688 (1972); Hartman v. State, 896 S.W.2d 94, 99 (Tenn. 1995). Thus, the right to counsel attaches "at the time an arrest warrant issues, a preliminary hearing is held (if no arrest warrant is issued), or an indictment or presentment is returned." State v. Jackson, 889 S.W.2d 219, 222 (Tenn. Crim. App. 1993) (citing State v. Mitchell, 593 S.W.2d 280, 286 (Tenn. 1980)). Clearly, the right to counsel attached in this case with the return of the presentment.

A defendant is entitled to the assistance of counsel at every critical stage of the proceedings. The pre-trial "critical stages" at which the defendant is entitled to the assistance of counsel include: preliminary hearings, post-indictment lineups, and any post-indictment proceedings on motions for court-ordered mental evaluations of the defendant. See Coleman v. Alabama, 399 U.S. 1, 9-10 (1970) (concluding that the preliminary hearing is a "critical stage"); Wade, 388 U.S. at 236-37 (holding that post-indictment lineup was a "critical stage" of prosecution); State v. Huskey, 964 S.W.2d 892, 898 (Tenn. 1998) (finding that a defendant has a constitutional right to have counsel present during proceedings on a motion for the mental evaluation of defendant); McKeldin v. State, 516 S.W.2d 82, 85 (Tenn. 1974) (holding that the Tennessee preliminary hearing is a pretrial type of arraignment where certain rights may be sacrificed or lost such that a defendant has the right to counsel);[7] see also Moulton, 474 U.S. 159, 176 (holding that, once Sixth Amendment right to counsel has attached, law enforcement officials are barred from obtaining incriminating statements from defendant through third parties); accord Hartman, 896 S.W.2d at 99.

However, not every preparatory step in the evidence-gathering process is a "critical stage" that would implicate the Sixth Amendment right to counsel. For instance, there is no Sixth Amendment right to have defense counsel present when the State provides a pretrial photographic display to a witness. See United States v. Ash, 413 U.S. 300, 321 (1973); Houston v. State, 567 S.W.2d 485, 488 (Tenn. Crim. App. 1978). Likewise, there is no Sixth Amendment right to have defense counsel present during a court-ordered mental examination of the defendant. Huskey, 964 S.W.2d at 897-98; Martin, 950 S.W.2d at 27. In United States v. Wade, the Supreme Court, distinguishing between a post-indictment lineup and other pretrial steps in the gathering of evidence, noted that certain preparatory steps are not critical stages of the prosecution:

> The Government characterizes the lineup as a mere preparatory step in the gathering of the prosecution's evidence, not different–for Sixth Amendment purposes–from various other preparatory steps, such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like. We think there are differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of

---

[7] For discussions of whether an arraignment is a critical stage for purposes of the Sixth Amendment right to counsel, see State v. Sutton, 761 S.W.2d 763, 768-69 (Tenn. 1988), and State v. Street, 768 S.W.2d 703, 709 (Tenn. Crim. App. 1988).

the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial.

388 U.S. at 227-28.

We must now determine whether a post-presentment search warrant proceeding in which the government seeks to obtain a blood sample from the defendant is a critical stage of the prosecution. The Court of Criminal Appeals alluded to this issue in State v. Baker, 956 S.W.2d 8 (Tenn. Crim. App. 1997). In that case, the defendant argued that he was entitled to an adversarial hearing when officers sought a search warrant to obtain "a quantity of blood, saliva and pubic and head hairs" from him. Id. at 13. In rejecting that argument, the court stated:

It is clear the investigating officers had two procedural methods for obtaining the samples from the appellant. First, the officers could obtain a search warrant authorizing them to obtain the samples from the appellant's body. Second, the officers could have enlisted the assistance of the District Attorney General's Office, filed a motion in the trial court seeking the entry of an order permitting the officers to obtain the samples, and both parties could have litigated the issues at an adversarial evidentiary hearing. The officers opted to obtain a search warrant. The appellant was not entitled to be present or litigate the issue of whether the officers had probable cause to support the issuance of the warrant prior to the warrant being issued.

Id. The discussion in Baker, however, does not mention the Sixth Amendment, nor does it state whether or not the search warrant was sought before or after the initiation of criminal proceedings against the defendant. Because of these two unanswered questions, Baker does not provide perfect guidance.

The precise issue here, however, has been addressed by courts in other jurisdictions. See Dickerson v. State, 526 S.E.2d 443, 446 (Ga. Ct. App. 1999), aff'd 542 S.E.2d 487 (Ga. 2001);[8] McClain v. State, 410 N.E.2d 1297, 1302-03 (Ind. 1980); State v. Delisle, 630 A.2d 767, 767-68 (N.H. 1993); State v. Meyers, 546 P.2d 771, 772-73 (Or. Ct. App. 1976); State v. Mata, 30 S.W.3d 486, 488-89 (Tex. Ct. App. 2000); State v. Kennison, 546 A.2d 190, 192-93 (Vt. 1987); State v. Kalakosky, 852 P.2d 1064, 1069 (Wa. 1993). In the foregoing cases, the respective courts concluded

---

[8]The Sixth Amendment issue decided by the Court of Appeals in Dickerson was not appealed to the Supreme Court of Georgia; the latter court's review pertained only to a separate issue.

that an ex parte application for a search warrant to obtain a blood sample[9] from a defendant, sought *after* the defendant had been charged, was not a critical stage of the proceedings. As the Court of Appeals of Texas stated in Mata:

> To determine whether a particular stage is critical, "we must scrutinize [the] pre-trial event with a view to ascertaining whether presence of counsel is necessary to assure fairness and the effective assistance of counsel at trial." Green v. State, 872 S.W.2d 717, 720 (Tex. Crim. App. 1994) . . . . A pre-trial stage is not critical when "confrontation with counsel at trial can serve as a substitute for counsel at the pretrial confrontation." [United States v. Ash, 413 U.S. 300, 309 (1973)].

30 S.W.3d at 488. Along the same lines, the Court of Appeals of Oregon stated in Meyers: "[w]e see no prejudice to defendant's rights where the state is properly authorized to take specimens of body samples and defendant has the opportunity to challenge any violation of that authority by moving to suppress specimens improperly seized." 546 P.2d at 773. Thus, the above-mentioned courts held that the ex parte nature of the search warrant did not violate the defendant's Sixth Amendment right to counsel.

We now hold that a post-presentment, ex parte search warrant proceeding to obtain a blood sample from the defendant is not a critical stage of the prosecution, and two compelling reasons inform our holding. First, we conclude that an ex parte search warrant proceeding does not diminish the defendant's right to a fair trial. Consistent with the analysis in Mata and Meyers, we note that the defendant in this case was permitted to, and did in fact, file a motion to suppress the evidence

---

[9] McClain did not involve a blood sample, but involved a "swab emission test" to determine whether the defendant had a sexually transmitted disease. 410 N.E.2d at 1301.

pursuant to Rules 41(f)[10] and 12(b)[11] of the Tennessee Rules of Criminal Procedure. Consequently, the defendant seized the opportunity to challenge the evidence that was obtained pursuant to the search warrant in question.

Second, the nature of the evidence-gathering process compels this result. An effective search warrant process requires secrecy, confidentiality, and exclusion of the person or persons under investigation. If a defendant and counsel were permitted to participate in the search warrant process at the magistrate level, then the State would no longer be able to extend to affiants and witnesses the secrecy and confidentiality the State relies on to elicit the testimony necessary to meet its probable cause requirement. Thus, the efficacy of search warrants as a tool to uncover evidence of criminal activity would be lost to the State.

---

[10] Tennessee Rule of Criminal Procedure 41(f) provides:

> Motion for Return or Suppression of Property. A person aggrieved by an unlawful or invalid search or seizure may move the court pursuant to Rule 12(b) to suppress any evidence obtained in such unlawful search or seizure. If property was unlawfully seized, the aggrieved person may move for the return of the property; and the motion shall be granted, except as to the return of contraband, if the evidence in support of the motion shows that:
> (1) the search or seizure was made illegally without a search warrant, or illegally with an invalid search warrant, or in any other way in violation of the constitutional protection against unreasonable searches and seizures; or
> (2) a search warrant was relied upon, but the search warrant or supporting affidavit is legally insufficient on its face and hence invalid; or
> (3) the search warrant relied upon was issued upon evidence consisting in material part of willful or reckless misrepresentations of the applicant to the issuing magistrate, resulting in a fraudulent procurement; or
> (4) the search warrant does not describe the property seized, and the seized property is not of such a character as to be subject to lawful seizure without a warrant.

[11] Tennessee Rule of Criminal Procedure 12(b) provides:

> Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:
> (1) Defenses and objections based on defects in the institution of the prosecution; or
> (2) Defenses and objections based on defects in the indictment, presentment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings); or
> (3) Motions to suppress evidence; or
> (4) Requests for discovery under Rule 16; or
> (5) Requests for a severance or consolidation of changes or defendants under Rule 14.

For the foregoing reasons, we hold that the Sixth Amendment does not entitle the defendant to an adversarial hearing on the issuance of the search warrant.[12] Thus, the trial court did not err in denying the defendant's motion to suppress the DNA evidence derived from the blood sample obtained pursuant to the ex parte search warrant.

## IV. Conclusion

The judgment of the Court of Criminal Appeals is affirmed. It appearing that Allen Prentice Blye is indigent, the costs are taxed to the State of Tennessee, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE

---

[12]We express no opinion on the separate issue of whether an adversarial proceeding is required for a search warrant authorizing more major medical procedures, e.g., forced surgery to recover a bullet fired by the victim. See generally, Winston v. Lee, 470 U.S. 753 (1985).