IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 24, 2018

**LARRY WADE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**No. 288261   Thomas C. Greenholtz, Judge**

_____

**No. E2017-02177-CCA-R3-PC**

_____

The petitioner, Larry Wade, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received effective assistance of counsel upon the entry of his guilty plea and during the subsequent hearing on the motion to withdraw his guilty plea. Following our review, we affirm the denial of the petition and further conclude the petitioner does not have a constitutional right to effective assistance of counsel during a hearing on a motion to withdraw a guilty plea after sentence has been imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., joined. NORMA MCGEE OGLE, J., filed a separate opinion concurring in part and dissenting in part.

Larry Wade, Henning, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Neal Pinkston, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On September 20, 2010, the petitioner pled guilty to the second degree murder of Lesley Washington, Jr. The petitioner later filed a motion to withdraw his guilty plea with the assistance of trial counsel. After an initial hearing on the motion to withdraw, the trial court appointed new counsel ("motion counsel") and conducted a second hearing

on the petitioner's amended motion to withdraw his guilty plea. In the amended motion, the petitioner alleged:

1) The [trial] [c]ourt did not inform him of the elements necessary to constitute the crime of second degree murder.
2) [Trial] counsel did not inform [the petitioner] of the basis necessary for withdrawal of a guilty plea.
3) [Trial] counsel did not have a preliminary hearing.
4) [Trial] counsel did not pursue a possible conflict of interest regarding [the trial court].
5) [Trial] counsel did not obtain exculpatory evidence.
6) [Trial] counsel did not properly interview and investigate the state's main witness.
7) [Trial] counsel did not fully discuss proper trial strategies and properly interview all witnesses.
8) [The petitioner's] belief that his Motion to Suppress had been denied.
9) [The petitioner's] belief of no factual basis for his plea. [1]

After its review, the trial court denied the petitioner's motion to withdraw the guilty plea, and he appealed.

On appeal, this Court provided the following summary of the factual and procedural history of the petitioner's case:

[The petitioner], Larry Wade, was indicted by the Hamilton County Grand Jury for premeditated murder, felony murder, and especially aggravated robbery. Following a pretrial hearing on [the petitioner's] motion to suppress, which the trial court took under advisement, [the petitioner] entered a guilty plea to second degree murder on the same day as the suppression hearing. [The petitioner] subsequently filed a motion to withdraw his guilty plea, which the trial court denied after two separate hearings. On appeal, [the petitioner] asserts that the trial court's failure to rule on his motion to suppress prior to accepting his guilty plea violated his due process rights, and consequently, [the petitioner's] guilty plea was unknowingly and involuntarily entered, and [the petitioner] asserts that it was a manifest injustice to deny [the petitioner's] motion to withdraw his guilty plea. After a careful review of the record, we affirm the judgment of the trial court.

---

[1] The petitioner's amended motion to withdraw his guilty plea is not found in the record on appeal. This list is taken from Exhibit 4 of the post-conviction hearing.

***Hearing on [the petitioner's] motion to suppress and plea submission hearing***

On September 20, 2010, the trial court conducted a hearing on [the petitioner's] motion to suppress evidence. Investigator James Tate, of the major crimes division of the Chattanooga Police Department, testified that in June, 2009, he and Investigator Mercado interviewed [the petitioner] at the Jefferson County Jail. Investigator Tate testified that he asked [the petitioner] where he was from, and [the petitioner] stated that he was from Nashville. Investigator Tate asked [the petitioner] if he had ever been to Chattanooga, and [the petitioner] stated that "it had been a while." [The petitioner] stated that he had "only been through [Chattanooga]" and that he had "never stopped." Investigator Tate testified that [the petitioner] then invoked his right to an attorney. Neither investigator asked [the petitioner] any more questions.

[The petitioner] testified that when he entered the interview room at the Jefferson County Jail, Investigators Tate and Mercado were there. They asked him his name and he told them. [The petitioner] testified that he then asked for his attorney, and one of the detectives asked [the petitioner] why he wanted his attorney and stated that he had not yet asked him any questions. [The petitioner] testified that he was not handcuffed but that the interview room was locked. He testified that he "tried to leave," and the detectives "wouldn't let [him] leave."

At the conclusion of the hearing, the trial court took the matter under advisement and stated that it would issue a written order on the motion to suppress. The trial court acknowledged that the disputed issue was whether Investigator Tate's question to [the petitioner] about having been to Chattanooga was "background" or interrogation.

On the same day as the suppression hearing, [the petitioner] entered a guilty plea in count 1 of the indictment to the lesser-included offense of second degree murder and was sentenced to serve 15 years in the TDOC as a range I offender. At the guilty plea hearing, upon the State's motion, counts 2 and 3 of the indictment, charging [the petitioner] with felony murder and aggravated robbery, were dismissed.

We will summarize the facts underlying [the petitioner's] conviction, as stated by the prosecutor at the plea submission hearing, as follows. On

August 10, 2006, at approximately 8:30 or 9:00 a.m., Reginald White arrived at his residence on Fourth Avenue in Chattanooga and found his roommate Leslie Washington, Jr., shot to death. The victim was lying near the doorway to his bedroom with one gunshot wound to his right thigh and one gunshot wound to his head. Mr. White contacted the police. Police officers found an open window and a box fan and window screen lying below the window. Police officers collected latent prints from the box fan. The house was "ransacked."

Sometime in late 2008, Eliashanti Dean, who was serving a federal prison sentence for drugs and firearm charges, told police that he and [the petitioner], whom he knew as "Lako," had been friends. The prosecutor stated that if called to testify at [the petitioner's] trial, Mr. Dean would testify that

> On this particular date, he would testify that he--some other individuals, Norman Ricks, you remember the [c]ourt recalls there was a case in here about Norman Ricks, Mr. Wade, also known as Lako or L.A., and Tag Loc, this Antonio Radley, who also is from Nashville, were at a Motel 6 on Lee Highway there at the exit on I-75, Lee Highway, Bonny Oaks exit, and indicated that a phone call between the [petitioner] and Norman Ricks about going to hit a lick was about a robbery.

> They leave [the petitioner] with what he recalls is a 9mm, which there's some discrepancy in that, and Tag Loc with some type of revolver. They come back later, [the petitioner's] in a different state of mind than he was, there's conversations. He would testify that [the petitioner] later admits to having to shoot someone in the house.

[The petitioner's] fingerprints were taken while he was incarcerated at the Cocke County Jail and compared to the latent prints taken from the crime scene. [The petitioner's] palm print matched the latent print taken from the box fan.

The trial court explained to [the petitioner] the charges against him as well as the lesser-included offenses of those charges and the potential ranges of punishment. The trial court also explained the rights that [the petitioner] would waive by entering a guilty plea. [The petitioner] stated

- 4 -

that he had obtained a GED and completed two years of college. [The petitioner] acknowledged that he understood his rights, that he understood that he would relinquish those rights by pleading guilty, that he was satisfied with his attorney's services, and that he was entering his plea freely and voluntarily. The trial court accepted [the petitioner's] guilty plea, determining that he was competent to enter the plea and that he was "entering it freely, voluntarily, understandingly, intelligently, and that there [wa]s a factual [ ] basis for the plea."

### Hearings on [the petitioner's] motion to withdraw his guilty plea

On December 2, 2010, at a hearing on [the petitioner's] motion to withdraw his guilty plea, Xaviera Price, [the petitioner's] girlfriend, testified that [the petitioner] sent her a motion to withdraw his guilty plea and a letter instructing her to file it no later than October 20, 2010. The envelope was postmarked on October 15, 2010, and Ms. Price testified that she received it on October 19, 2010. On the following day, she attempted to file the motion at the criminal court clerk's office, but she was not allowed to file it and she was told that only [the petitioner] or his attorney could file something on [the petitioner's] behalf. She spoke to [the petitioner] by phone that evening, and [the petitioner] again instructed her to file the motion. She attempted to file the motion again on the following day, October 21, 2010, and was allowed to file it.

[The petitioner] testified that he mailed a letter and a *pro se* motion to withdraw his guilty plea to the clerk's office and requested that the motion be filed at the same time he mailed the letter and motion to Ms. Price. [The petitioner] was not represented by counsel at that time. [The petitioner] testified that his guilty plea should be set aside because he "was misinformed by members of [his] defense team on the suppression hearing being denied." [The petitioner] testified that he was told by his private investigator that the trial judge "rarely grants suppressions." [The petitioner] "felt backed in a corner," and he pleaded guilty "off of pure fear." [The petitioner] testified that he was also told by the private investigator that if he had newly discovered evidence, it would be grounds to withdraw his guilty plea; however, he testified that his trial counsel advised him that it was not possible to withdraw his guilty plea on the basis of newly discovered evidence.

[The petitioner] acknowledged on cross-examination that he had pleaded guilty in other cases before his guilty plea in this case. He also

testified on cross-examination that his trial counsel did not tell him that the motion to suppress was granted or denied. [The petitioner] testified that he understood the charges against him and the potential sentences at the time he entered his guilty plea. He testified that he did not read the waiver of rights form that he signed prior to entering his guilty plea and that he "may have" discussed his rights with trial counsel. [The petitioner] testified that he remembered being questioned by the court and stating that he understood his rights and the plea agreement; however, he testified that he accepted the plea offer "against [his] will."

The trial court took the matter under advisement. [The petitioner] was subsequently appointed new counsel and counsel filed another motion to withdraw [the petitioner's] guilty plea, upon which a hearing was held on June 8, 2011. At that hearing, [the petitioner] testified that the elements of the crime to which he pled guilty were never explained to him and that he "thought [he] pled guilty to felony murder in the second degree." [The petitioner] also testified that he was not afforded competent counsel. He testified that his original trial counsel "told [him] to go ahead and take th[e] plea [ ] and [that] later [he] could withdraw the plea and proceed to trial." [The petitioner] testified that counsel advised him that "it would be better to have new evidence, but he just basically had [the petitioner] under the assumption that [he] could just file a motion to withdraw the plea and the plea would be withdrawn." [The petitioner] testified that counsel later explained that a motion to withdraw his guilty plea must be filed within 30 days. [The petitioner] testified that he did not have a preliminary hearing. He testified that trial counsel failed to obtain exculpatory evidence; that he did not provide [the petitioner] with discovery materials; that he failed to properly investigate and interview witnesses; and that he did not fully discuss possible trial strategies with him. [The petitioner] testified that trial counsel told him on the day of the hearing on his motion to suppress that the trial judge rarely grants suppression motions, and [the petitioner] testified that "it was [his] understanding that [the motion to suppress] was denied." Finally, [the petitioner] testified that there was no factual basis for his guilty plea.

On cross-examination, [the petitioner] acknowledged that trial counsel filed several motions on his behalf. He also testified that he saw discovery materials. He acknowledged that the plea agreement stated the offenses for which he was charged and the offense to which he pled guilty and the sentence he received. He testified that he signed the plea agreement, but he did not read it. He testified that trial counsel failed to

contact or interview alibi witnesses and that he told trial counsel about the witnesses in February, 2010, prior to entering his guilty plea. [The petitioner] attempted to contact those witnesses but was unable to establish contact until after his guilty plea was entered.

In a written order denying [the petitioner's] motion to withdraw his guilty plea, the trial court found that [the petitioner's] *pro se* motion to withdraw his guilty plea was timely filed because it was postmarked before the judgment became final, indicating that [the petitioner] had delivered the motion to an appropriate individual at the correctional facility where [the petitioner] was serving his sentence.

The trial court concluded that [the petitioner's] guilty plea was voluntarily and intelligently entered. The [trial] court found that [the petitioner's] testimony was the only evidence that the court's denial of [the petitioner's] motion to suppress was one of the premises of his plea, and the court found that [the petitioner] was not a credible witness and that his testimony was contradictory. The [trial] court found that [the petitioner's] testimony that he understood that his plea could be withdrawn upon the discovery of new evidence, another premise of his guilty plea, was also not credible. The [trial] court also found that there was no credible evidence that [the petitioner's] trial counsel was ineffective. Citing inconsistencies in [the petitioner's] testimony, the court stated

Furthermore, the [the petitioner's] testimony about discovery and the advice about withdrawal of the plea was contradictory. The [petitioner], by one of his accounts, did see discovery and the record reflects that, in addition to the motion to suppress, counsel did file requests for discovery and exculpatory evidence, a second request for discovery or a motion to compel disclosure, several motions *in limine,* and notices of intent to call one or more experts. In any event, it is clear that the [petitioner] was aware of the unfavorable evidence and any favorable evidence or lack of favorable evidence.

As for the erroneous advice about withdrawal of the plea, at the December hearing, the [petitioner] identified the defense investigator as the source. At the June hearing, however, he identified counsel as the source. Although counsel did not testify, considering the lack of evidence to

support some of the [petitioner's] allegations regarding the omissions of counsel, the evidence in the record belying his testimony in support of other such allegations, and his self-contradictory testimony regarding the remaining such allegations, the [c]ourt finds no manifest injustice in this respect.

*State v. Larry A. Wade*, No. E2011-01538-CCA-R3-CD, 2012 WL 4479266, at *1-4 (Tenn. Crim. App. Sept. 28, 2012), *perm. app. denied* (Tenn. Mar. 5, 2013). After its review, this Court upheld the rulings of the trial court.

The petitioner next filed several petitions for post-conviction relief. Within the various petitions, he alleged trial counsel, motion counsel, and appellate counsel were ineffective. In the initial petition, filed on May 29, 2013, the petitioner claimed he received ineffective assistance of counsel at the hearing on the motion to withdraw his guilty plea because motion counsel failed to effectively show that trial counsel was ineffective at the time the petitioner pled guilty. Specifically, as to motion counsel's actions at the motion to withdraw hearing, the petitioner alleged motion counsel: (1) failed to call trial counsel as a witness; (2) failed to call alibi witnesses, Wendy Mace and Lisa Mace; (3) failed to call Dennis Bakkom, trial counsel's private investigator, "in order to set forth the conversation between [Mr.] Bakkom and the petitioner regarding newly discovered evidence, alibi witnesses, and suppression hearing ruling;" and (4) "failed to present any proof in support of the claims being raised in the motion to withdraw the petitioner's guilty plea."

In an "Amended Petition for Post-Conviction Relief," the petitioner alleged that prior to entering his guilty plea, trial counsel: (1) failed "to request or procure exculpatory evidence;" (2) failed "to advise and counsel [the] [p]etitioner regarding the outcome of the suppression hearing [of] September 20, 2010;" (3) failed to properly advise the petitioner of "the elements necessary to prove second degree murder and potential punishment;" (4) failed to explain the substance of the guilty plea; (5) "erroneously advised" the petitioner "he had one (1) year to withdraw his plea once he could contact his alibi witness" or present newly discovered evidence; (6) failed to inform the petitioner of trial strategies or locate alibi witnesses; and (7) failed to properly investigate "the involvement of [an] Assistant United States Attorney [ ], the trial court judge's son, in the investigation that lead (sic) to the arrest of [the] [p]etitioner."

In a subsequent "Amended Petition for Post-Conviction," the petitioner presented additional allegations against motion counsel. Specifically, the petitioner claimed motion counsel failed to: (1) "obtain[] and review[] discovery before filing to amend [the] motion to withdraw plea petition;" (2) "effectively address[] the ineffective assistance of

[trial counsel] in his defense at the pre-trial and subsequent guilty plea proceedings;" (3) "properly and effectively address[] the conflict of interest claim against [the trial court] where his son, [an Assistant U.S. Attorney], was actively involved in the investigation of the petitioner as a suspect in this crime;" and (4) "address[] the petitioner's right to plea 'Alford' nolo contendere plea or be explained to by the court on the record why the court would not accept" an Alford plea. The petitioner also alleged ineffective assistance against appellate counsel, claiming counsel: (1) "did not argue [the] conflict of interest claim in relation to the ineffective assistance claim with the appellate court;" (2) "did not argue abuse of discretion of [the trial court] using claims made outside of the record to deny [the] motion to withdraw plea claim;" and (3) "did not argue abuse of discretion of the trial court where [motion counsel] made an agreement with the court to acknowledge alibi witnesses being present in the courtroom and ready to testify but to allow [the] petitioner[']s testimony to count for what they would have testified to[]."

Finally, in the petitioner's "Second Amended Petition for Post-Conviction," he further alleged motion counsel "was deficient by not addressing how [trial counsel] was deficient by not addressing the prosecutorial misconduct of withholding evidence related to prints, specifically, an exculpatory print report from the first time the petitioner[']s prints were compared on or around [November 20, 2008]." The petitioner also claimed motion counsel failed to impeach the State's witness, Eliashanti Dean.

The post-conviction court held evidentiary hearings on July 22, 2016, November 4, 2016, and January 27, 2017. With the help of advisory counsel, the petitioner presented the following evidence in support of his petitions:

After being appointed to represent the petitioner, motion counsel filed an amended motion to withdraw the petitioner's guilty plea for second degree murder. Prior to filing the amended motion, motion counsel met with the petitioner approximately five times. Pursuant to their discussions, motion counsel addressed "about nine issues" in the amended motion to withdraw, relying on the petitioner's testimony to support the allegations. Because the petitioner had "a laundry list of complaints" that lacked credibility, motion counsel advised the petitioner to focus on the trial court's failure to rule on his motion to suppress prior to the entrance of his guilty plea. Generally, motion counsel's strategy "was to get everything in front of the judge and let him review it to see whether or not [the petitioner] could withdraw [his] guilty plea."

Motion counsel did not think the alibi witness issue had merit and told the petitioner he "might want to concede" that issue. Motion counsel testified that he spoke with the proposed alibi witnesses at the motion to withdraw hearing and went on to explain:

- 9 -

And I said that on the - "on that issue, Judge, I have witnesses in the courtroom and if you want to hear from them, they're alibi witnesses, if you want to hear from them they are here." So I didn't put them on the stand, but I tendered them so that the judge would be able to make that decision.

Motion counsel did not receive or review any discovery in the petitioner's case as it "was well beyond that when [he] got involved in it." However, motion counsel discussed the petitioner's case with trial counsel prior to the motion to withdraw hearing. As a result of their conversation, motion counsel chose not to call trial counsel as a witness, despite the petitioner's ineffective assistance claims against him. Motion counsel reasoned "[trial counsel] was going to testify he had done everything that he possibly could" and "was going to tell the truth and that would kill [the petitioner's] case."

Motion counsel described his representation of the petitioner, as follows:

I took the nine issues that [the petitioner] wanted to issue for a complaint. I helped [the petitioner] put it together. I filed it. Went to court with [the petitioner], put [the petitioner] on the stand and allowed [the petitioner] to verbalize all the complaints that [he] had. If I -- if I covered them, it was done. If there's no issue, then [the petitioner] never told me about any other issue.

Motion counsel provided several examples detailing the above-referenced representation. For example, motion counsel was unaware the petitioner was under a federal hold and therefore, did not investigate the same. He did not attempt to obtain a copy of the alleged police interview video, noting the petitioner never told him the video existed. Motion counsel did not review police reports in the petitioner's case. He did not call the petitioner's alibi witnesses, Wendy Mace and Lisa Mace Rigdon, to testify at the motion to withdraw hearing on June 8, 2011 because he and the petitioner discussed "an alibi is a very, very weak way to try to convince" the trial court to grant his motion to withdraw. Motion counsel definitively stated his failure to call the alibi witnesses at the motion to withdraw hearing would not have changed the outcome of the petitioner's case as "[t]he evidence was overwhelming." He further stated, "I did what [the petitioner] wanted me to do, and I used that information to draw up the petition. I don't believe an attorney has a duty to investigate at that point." Finally, motion counsel noted the trial court, in denying the motion to withdraw, found the petitioner "had no credibility."

During cross-examination, motion counsel explained the petitioner wanted his motion to withdraw filed quickly. He stated he was appointed to the petitioner's case on

- 10 -

May 3, 2011 and withdrew from the petitioner's case on July 11, 2011. Motion counsel's goal upon appointment to the case "was to make [the petitioner] happy."

Trial counsel then testified, stating he and the petitioner reviewed the discovery together and he "had no indication that [the petitioner] did not understand the evidence against [him] and what we had." Concerning the petitioner's claim that the State withheld fingerprint reports, trial counsel explained the petitioner was identified as a suspect in Mr. Washington's murder by "a palm print at the crime scene at the window." As such, "the focus of [his] defense in this case wasn't on fingerprints." In reviewing a report by Investigator Duke of the Chattanooga Police Department, trial counsel noted the petitioner's fingerprints were not in AFIS on November 19, 2008. However, trial counsel believed the petitioner's fingerprints were on file the "whole time" while the petitioner's palm print "wasn't available prior to [his] arrest." Trial counsel explained, "[t]here [were] no fingerprints connecting [the petitioner] to this -- to this crime scene. So the fact that they couldn't locate [the petitioner's] fingerprints and later now found that there were fingerprints, I don't -- I didn't think that hurt us."

Trial counsel did not remember filing a motion to compel discovery relating to the petitioner's fingerprints. However, he stated:

> But I imagine that I filed a more specific discovery request and asked for any information [Investigator Duke] had about any other print information he had. I mean, I -- because to me the prints are important. I wanted to know as much as I possibly could about how they got the prints, what kind of prints they were comparing because they were trying to connect [the petitioner] to the murder scene by a palm print so I wanted to know as much as I could about it. That was the critical piece of evidence that we had to attack.

Trial counsel believed he received "all that [the State] had" regarding the petitioner's prints and stated he "never got the impression [the State was] hiding a document." Additionally, trial counsel hired a "print expert" in the petitioner's case who took "a brand new control print from [the petitioner] and I think it was at the Hamilton County Jail. And he compared the lifted print and I think the original with the control print that we obtained."

Trial counsel also filed a motion to suppress the petitioner's statement made to police in Jefferson County, claiming they failed to issue *Miranda* warnings.[2] Though trial counsel was "not sure if there was a video" of the police interview, his private

---

[2] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

investigator, Dennis Bakkom, entered a public records request for the same. The State, however, maintained no video of the interview existed.

Concerning the petitioner's claim that evidence was illegally obtained while he was being held on an illegal federal "hold," trial counsel testified "there was no federal involvement in the case that [he was] aware of." Trial counsel was unaware the petitioner was under a federal "hold," rather, believing the petitioner "had charges in Jefferson County."

Regarding police reports pertinent to the petitioner's case, trial counsel could not remember what he did to obtain a copy of the original police report filed by Detective Tate dated June 26, 2009. The petitioner alleged Detective Tate edited the June 26, 2009 police report on July 16, 2009, but trial counsel was unaware of the same. The June 26, 2009 report, along with another police report filed by Officer Bill Phillips on June 26, 2009 and edited on July 17, 2009, was entered into evidence.

As to witness issues, trial counsel stated he did not remember the substance of Eliashanti Dean's, the jailhouse informant, statement concerning the petitioner's case. Trial counsel also noted that they did discuss the alibi witnesses that emerged prior to the petitioner's guilty plea. Specifically, trial counsel stated, "[w]e were given some alibi witnesses that we followed up with, that we made contact with, that would not have helped us at trial." Trial counsel did not remember telling the petitioner he could withdraw his guilty plea after contacting the alibi witnesses. Additionally, as to the alleged conflict of interest of the trial court, trial counsel stated he was "not aware of any conflict of interest that existed, but, I mean, it doesn't mean I wouldn't exploit it to my client's benefit if it was available."

Concerning the plea offer and the petitioner's acceptance of the same, trial counsel did not arrange for the guilty plea to occur on the same day as the suppression hearing. Rather,

> The plea came by an offer from the district attorney who gave no indication at all of his willingness to resolve the case. I think as a result of that -- well, I can't read his mind, but we were made an offer and it happened to be one that [the petitioner was] excited about.

Though unclear in the record, trial counsel met with the petitioner and Mr. Bakkom after the petitioner pled guilty. During this meeting, the petitioner indicated he wanted to withdraw the guilty plea. Trial counsel then informed the petitioner of the law applicable to a withdrawal motion.

- 12 -

Appellate counsel testified he was appointed to the petitioner's case after the trial court denied the petitioner's withdrawal motion. At the time of the appointment, the petitioner "felt it was unfair that [he] was not able to" withdraw his guilty plea. Appellate counsel did not specifically remember the issues raised on appeal, but stated, "I will stand on whatever was filed in the brief is what we filed." Though appellate counsel acknowledged motion counsel's failure "to put on evidence" requested by the petitioner in support of his motion to withdraw the guilty plea would affect the issues available for review on appeal, he did not recall that happening in the petitioner's case. Additionally, appellate counsel had no memory of a conflict of interest issue involving the trial court.

John Derreck Whitson represented the petitioner in Jefferson County, Tennessee, where the petitioner entered a guilty plea on September 2, 2009. While Mr. Whitson recalled discussing a federal hold placed on the petitioner with an assistant district attorney in Jefferson County, he could not recall the specific terms of the 2009 plea agreement or the federal hold.

In addition to testimony from the petitioner's former counsel, he also presented testimony from several police officers involved in the investigation of the petitioner's case. However, none were able to recall specific details in support of the petitioner's claims. Sergeant Allen Franks and Investigator William Puckett both testified they were aware of the proffer of Eliashanti Dean, the jailhouse informant, but neither took any action on the same. Investigator Phil Grubb testified he had no involvement in Mr. Dean's proffer. Investigator James Tate, however, acted on the information provided by Mr. Dean. According to Investigator Tate, "[a]fter the proffer we had information that [the petitioner] committed this crime." As such, he and Officer Alexis Mercado interviewed the petitioner at the Jefferson County jail on June 24, 2009. Both stated the interview did not last long as the petitioner did not want to speak to them.

Investigator Tate did request the petitioner's prints while he was in the Jefferson County jail, stating "the print from the crime scene that we were interested in was a palm print. It's not a fingerprint." Investigator Ed Duke, a certified print examiner with the Chattanooga Police Department, conducted a manual comparison of the petitioner's prints obtained from the FBI office in Knoxville, but he could not recall if the petitioner's fingerprints were in the AFIS system in November of 2008.

Dennis Bakkom, trial counsel's private investigator, testified he contacted two or three witnesses on behalf of the petitioner and examined the crime scene, but he did not remember many details about his investigation into the petitioner's case. For example, Mr. Bakkom did not remember the petitioner telling him a video existed of his police interview in the Jefferson County jail and he did not remember speaking with the district attorney on behalf of the petitioner. While Mr. Bakkom remembered an issue arose

concerning the petitioner's prints, he could not recall anything specific. Mr. Bakkom remembered meeting with the petitioner and trial counsel after the petitioner entered his guilty plea, but he did not remember trial counsel telling the petitioner he could withdraw his guilty plea after locating "his witnesses."

Ms. Mace-Ramsey[3] dated the petitioner "off and on" and attended his June 8, 2011 hearing after being contacted by motion counsel. She could not recall if the petitioner was with her in Knoxville on August 9 or 10, 2006, noting "he was in and out all the time." She stated neither trial counsel nor Mr. Bakkom contacted her in regards to the petitioner's case.

Finally, the petitioner testified, asserting he did not ask motion counsel to "hurry" to file his motion to withdraw the guilty plea. Rather, the petitioner stated he and motion counsel discussed the issues he wished to address in the motion to withdraw which included "a basic rundown of the conflict of interest[,] of me having witnesses that were never contacted[,] of what [trial counsel] told me prior to tak[ing] the plea[,] and so forth and so on." Though the petitioner told motion counsel how to contact the alibi witnesses, motion counsel failed to present them at the motion to withdraw hearing. Further, the petitioner did not believe motion counsel investigated any of his claims, stating:

> Specifically I didn't know that [motion counsel] could have researched the PACER information. I didn't know that [motion counsel] could have subpoenaed -- did subpoena duces tecums, I didn't know that [motion counsel] could have done a lot of things that I have done in this proceeding to try to show what could have been done by [motion counsel].

Regarding trial counsel's performance, the petitioner stated he reviewed the discovery available in his case with Mr. Bakkom, but not trial counsel. According to the petitioner, trial counsel's trial strategy "was to flirt with the juror." Coupling trial counsel's alleged strategy with the fact that trial counsel failed to contact the petitioner's alibi witnesses, the petitioner asserted he was not prepared to go to trial.

The petitioner testified he addressed the alleged conflict of interest issue of the trial court with trial counsel. According to the petitioner, the trial judge's son, an Assistant U.S. Attorney, participated in the investigation. As a result, the petitioner "felt like something was wrong with" the trial judge presiding over his case. However, the petitioner testified trial counsel "just told me not to worry about it."

---

[3]She is also referred to as Wendy Mace in the record.

Regarding the alleged illegal hold issue, the petitioner stated "the feds came and got [his] prints" while he was incarcerated "under federal hold" in the Cocke County jail. According to the petitioner, "[o]nce I made bond at the Cocke County jail I was transported to the Jefferson County jail and at the Jefferson County jail I tried to make bond again and was unable to due to being under a federal hold."

The petitioner stated he pled guilty in this case "because [trial counsel] told me once I get in touch with my witnesses I can come back and withdraw the plea." The petitioner discussed withdrawing his guilty plea with trial counsel "roughly a week or two after." According to the petitioner, trial counsel "told me that I didn't need to withdraw the plea and that it was some evidence that a fingerprint had blood by it and he told me a lot of stuff so at that time I didn't try to withdraw the plea." The petitioner, however, stated "I knew in my mind at the time I was going to withdraw the plea."

During cross-examination, the petitioner stated he was "37 or 38" years old and previously pled guilty to "three or four" misdemeanors and "two or three" felonies. The petitioner recalled entering guilty pleas for drug charges and attempted murder. He explained his guilty plea to attempted murder was reduced to an aggravated assault conviction after being granted post-conviction relief, though he could not remember the ineffectiveness allegations made against his attorney in that case. Prior to agreeing to and entering each of his previous guilty pleas, the petitioner recalled the trial court explained his rights to him. At the time of the present guilty plea, however, the petitioner claimed he had a "limited understanding" of his rights, despite indicating to the trial court he understood the same.

Regarding trial counsel, the petitioner stated "[trial counsel] lawyered a few issues" but was ineffective in his investigation of the case for failing to review discovery, locate witnesses, or go to the crime scene. However, the petitioner admitted at the time of his guilty plea, he knew there would be no trial and he would receive a fifteen-year sentence for second degree murder to be served at one hundred percent. Despite his assertions, the petitioner also claimed he thought he was pleading guilty to "[s]econd degree felony murder" and that trial counsel indicated his sentence "would drop down to 70 percent or 65 percent after [he] got to TDOC." The petitioner acknowledged his satisfaction with trial counsel at the entry of his guilty plea, noting "[h]e told me I could withdraw the plea once I got in touch with my witnesses. I was satisfied with that." The petitioner also acknowledged he told the trial court that trial counsel did everything he asked of him at the guilty plea hearing. Finally, the petitioner agreed the Court of Criminal Appeals ruled he was not a credible witness in denying his appeal.

After its review of the evidence presented, the post-conviction court issued an extensive order wherein it found the petitioner failed to meet his burden of proof and denied relief. This timely appeal followed.

## ANALYSIS

On appeal, the petitioner asserts trial counsel, motion counsel, and appellate counsel provided ineffective assistance throughout various stages of his prosecution. Specifically, the petitioner asserts neither trial counsel nor motion counsel properly investigated the facts of his case during their representation and suggests both failed to address an alleged conflict of interest of the trial court. The petitioner also argues motion counsel failed to call trial counsel "to testify at post-conviction" in order to prove his ineffectiveness. Finally, the petitioner asserts the post-conviction court abused its discretion in finding appellate counsel provided effective representation on appeal.

In order to determine the petitioner's present post-conviction claims, we first must address whether the right to counsel attaches at a hearing on a motion to withdraw a guilty plea after sentence is imposed pursuant to Rule 32 (f)(2). To do so, we must review whether a hearing on a motion to withdraw a guilty plea after the sentence has been imposed constitutes a "critical stage" of one's prosecution during which the Sixth Amendment right to counsel attaches. Upon our review of the applicable law, we conclude a hearing on a motion to withdraw a guilty plea once sentence has been imposed does not constitute a "critical stage," and therefore does not provide a constitutional right to the effective assistance of counsel.

Under both the United States and Tennessee Constitutions, a defendant enjoys the right to assistance of counsel "at every critical stage of the proceedings" against him. *State v. Blye*, 130 S.W.3d 776, 780 (Tenn. 2004); U.S. Const. amend. VI; Tenn. Const. art. I, § 9. "These constitutional provisions guarantee not simply the assistance of counsel, but rather the reasonably effective assistance of counsel." *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 934-36 (Tenn. 1975)). A critical stage emerges "'where counsel's absence might derogate from the accused's right to a fair trial.'" *Blye*, 130 S.W.3d at 780 (quoting *State v. Martin*, 950 S.W.2d 20, 25 (Tenn. 1997)). Though a precise definition for what constitutes a critical stage does not exist in Tennessee, "'arraignments, post-indictment interrogations, post-indictment lineups, and the entry of a guilty plea'" are recognized as critical stages. *Turner v. United States*, 885 F.3d 949, 953 (6th Cir. 2018) (quoting *Missouri v. Frye*, 566 U.S. 134, 140 (2012)). Additionally, Tennessee recognizes the plea-bargaining process as a critical stage. *Nesbit*, 452 S.W.3d at 787. However, our courts have not explicitly addressed whether a hearing on a motion

to withdraw a guilty plea once sentence has been imposed is a "critical stage" within the context of a defendant's Sixth Amendment right to counsel.

In contemplating this issue, we are guided by the principles surrounding other collateral attacks on a judgment and liken a hearing on a motion to withdraw a guilty plea after sentencing to a post-conviction hearing, wherein no constitutional right to effective assistance of counsel exists. *See House v. State*, 911 S.W.2d 705, 712 (Tenn. 1995); *Grindstaff v. State*, 297 S.W.3d 208, 219 (Tenn. 2009). Initially, we note, post-conviction relief is born by statutory construction rather than a right guaranteed by the constitution. Tenn. Code Ann. § 40-30-101. Within the Post-Conviction Procedure Act, the appointment of counsel is addressed, as follows: "If a petitioner not represented by counsel requests counsel and the court is satisfied that the petitioner is indigent as defined in § 40-14-201, the court shall appoint counsel to represent the petitioner." Tenn. Code Ann. § 40-30-107 (b)(1). Despite this statutory language, our supreme court has held "the scope of the right to counsel is limited, and applies only through the first appeal as of right. It does not apply to post-conviction proceedings." *House*, 911 S.W.2d at 712 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 554-555 (1987)). As such, post-conviction proceedings are not a critical stage, and "a post-conviction petitioner is not entitled to the effective assistance of counsel." *Grindstaff*, 297 S.W.3d at 219 (citing *House*, 911 S.W.2d at 712; *State v. Garrard*, 693 S.W.2d 921, 922 (Tenn. Crim. App. 1985)).

Similarly, in determining whether a hearing on a motion to withdraw a guilty plea after sentencing has occurred constitutes a critical stage, we note a defendant's ability to withdraw his guilty plea is not a constitutional right, but rather a remedy arising out of the Rules of Criminal Procedure. Specifically, Rule 32 of the Tennessee Rules of Criminal Procedure governs the withdrawal of a guilty plea and provides:

> **(f) Withdrawal of Guilty Plea.**
> (1) *Before Sentence Imposed.* Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason.
> (2) *After Sentence But Before Judgment Final.* After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice.

Tenn. R. Crim. P. 32 (f). As evidenced above, the language of Rule 32 does not address the appointment of counsel to a defendant who wishes to withdraw his guilty plea.

Using these principles as our guide, we conclude the petitioner was not entitled to the effective representation of counsel at the hearing on the motion to withdraw his guilty plea after sentencing as the hearing does not constitute a critical stage in his prosecution.

- 17 -

As noted, our supreme court has specifically identified a post-conviction proceeding, wherein a court is permitted to appoint counsel to indigent petitioners, as a non-critical stage. *House*, 911 S.W.2d at 712. Significantly, Rule 32 does not even mention representation within the context of a guilty plea withdrawal. Because Rule 32 provides a limited avenue for withdrawing a guilty plea and fails to address the appointment of counsel for the same, we conclude a hearing on a motion to withdraw after sentencing has been imposed is a non-critical stage provided for only by court rule, during which no constitutional right to counsel exists. Absent a right to counsel, there is also no right to effective assistance of counsel.[4] *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Wainwright v. Torna,* 455 U.S. 586, 587-88 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance of counsel); *State v. Oates*, 698 S.W.2d 79, 80-81 (Tenn. Crim. App. 1985); *Garrard*, 693 S.W.2d at 922). Accordingly, the petitioner is not entitled to relief.

Furthermore, the record indicates the petitioner exercised his right to counsel during the critical stages of his prosecution. The record demonstrates the petitioner entered a guilty plea including an agreed upon sentence after trial counsel conducted a thorough investigation into the petitioner's case. After unsuccessfully attempting to withdraw his guilty plea, the petitioner appealed the trial court's denial with the help of appellate counsel. On appeal, this Court held the petitioner "failed to establish that withdrawal of his guilty plea is necessary to correct a manifest injustice." *Wade*, No. E2011-01538-CCA-R3-CD, 2012 WL 4479266, at *8. It is clear the petitioner was afforded the effective assistance of counsel during the critical stages of his prosecution, including the plea-bargaining process and guilty plea hearings. The petitioner is not entitled to relief.

Despite the above reasoning, the petitioner still is not entitled to relief from this Court for his present post-conviction claims as his ineffective assistance of counsel claims have already been reviewed and denied by the trial court and this Court on appeal. The Post-Conviction Procedure Act "contemplates the filing of only one (1) petition for post-conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment." Tenn. Code Ann. § 40-30-102. Furthermore, "Tennessee courts have long adhered to the rule that a claim of ineffective assistance of counsel in a previous post-conviction proceeding is not cognizable as a basis for relief in a subsequent post-conviction action." *House*, 911 S.W.2d at 712 (citing *State v. Wilson*, 667 S.W.2d 113 (Tenn. Crim. App. 1983); *Recor v. State*, 489 S.W.2d 64, 68 (Tenn. Crim. App. 1972); *Dowlen v. State*, 477 S.W.2d 253, 254 (Tenn. Crim. App.

---

[4]Ohio, Idaho, Montana, and Washington have similarly held no right to counsel exists at a hearing on a motion to withdraw a guilty plea. *See Gilbert v. Hudson*, No. 1:08 CV 1867, 2009 WL 3246978, at *15 (N.D. Ohio 2009); *State v. Hartshorn*, 235 P.3d 404, 408 (Idaho Ct. App. 2010); *State v. Garner*, 36 P.3d 346, 356 (Mont. 2001); *State v. Winston*, 19 P.3d 495, 498 (Wash. Ct. App. 2001).

1971)).  As such, the petitioner is not now entitled to additional review of the same collateral attacks.

Throughout the record, the petitioner argues motion counsel was ineffective for failing to show trial counsel's ineffectiveness at the hearing on the motion to withdraw his guilty plea.  Though the petitioner has presented additional claims of ineffectiveness against trial, motion, and appellate counsel in his amended petitions for post-conviction relief, this does not overcome the established rule described above.  The record makes clear the petitioner presented his ineffective assistance of counsel claims against trial counsel as it related to the entrance of his guilty plea to the trial court during the hearing on the motion to withdraw his guilty plea.  As such, the withdrawal hearing served as a hearing on the petitioner's claims of ineffective assistance against trial counsel.  After the hearing on the petitioner's motion to withdraw his guilty plea for second degree murder, the trial court found the petitioner's "guilty plea was voluntarily and intelligently entered."  *Wade*, No. E2011-01538-CCA-R3-CD, 2012 WL 4479266, at *4.  Subsequently, this Court thoroughly reviewed the petitioner's case, and also concluded the petitioner's guilty plea was voluntarily and knowingly entered.  *Id.*, at *5-8.  The petitioner is not entitled to relief.

Finally, while it is certain a guilty plea must be knowingly, voluntarily, and intelligently entered in order to be valid, in the context of a post-conviction challenge to a guilty plea, both prongs of the *Strickland* test must still be met.  *See Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013).  Thus, to successfully challenge his guilty plea, the petitioner must show counsel's performance was deficient, and he "must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea."  *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Garcia*, 425 S.W. 3d at 257.  Here, nothing in the record suggests the petitioner's guilty plea to second degree murder was not valid and the issue has been reviewed by both the trial court and this Court on appeal.  *Wade*, No. E2011-01538-CCA-R3-CD, 2012 WL 4479266, at *4, 5-8.  Additionally, as noted by the post-conviction court, the petitioner failed to show prejudice regarding any of the issues presented in his post-conviction petitions, and we agree.  The petitioner is not entitled to relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE